FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN 10   AM 10: 47

LORETTA G. WHYTE
CLERK

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT | * | CIVIL ACTION |
| OF NEWPARK ENVIRONMENTAL | * | |
| SERVICES, L.L.C., AS OWNER *PRO HAC* | * | NUMBER 02-1203 - "F-5" |
| *VICE* OF THE M/V NESI HOPPER | * | |
| BARGE SH-218 FOR EXONERATION | * | JUDGE MARTIN L.C. FELDMAN |
| FROM OR LIMITATION OF LIABILITY | * | MAGISTRATE ALMA L. CHASEZ |

************************************************************************

### NEWPARK ENVIRONMENTAL SERVICES, LLC'S OPPOSITION TO MOTION TO REOPEN LIMITATION PROCEEDING AND SET ASIDE DEFAULT

**MAY IT PLEASE THE COURT:**

Newpark Environmental Services, LLC ("Newpark") opposes the pending motion by Chouest Offshore Services, LLC and Edison Chouest Offshore, LLC ("Chouest") seeking to re-open Limitation of Liability proceedings filed by Newpark over three years ago and to set aside a default judgment. Chouest is precluded from seeking contribution and tort indemnity for alleged negligence acts of Newpark as vessel owner—the sole reason for filing a late claim and setting aside the default judgment—under *McDermott v. AmClyde*, 511 U.S. 202 (1994) because the single claimant, John Harris, Jr., dismissed his claims with prejudice against Newpark after settlement. Chouest, as a potential non-settling claimant, cannot prevail on the merits because claims for contribution and tort indemnity are barred and Chouest may only be liable for its proportionate share of fault. *In re J.A.R. Barge Lines, L.P.*, 2005 WL 642700 (W.D. Pa.).

1



Second, and in the alternative, Chouest cannot meet the requirements for filing a late claim because: 1) the settlement and order dismissing Harris' claims with prejudice determined these proceedings; 2) reopening the Limitation proceedings after that settlement and at this late date will adversely affect Newpark; and 3) Chouest has not adequately explained why it failed to receive notice of the Limitation proceeding, which was properly published in a district where it operates after Harris fell to the deck of its vessel and prompted an internal investigation in May, 2001. *Golnoy Barge Co. v. M/V SHINOUSSA*, 980 f.2D 349, 351 (5TH Cir. 1993).

## I.    *Background and Limitation of Liability Proceedings*

This matter arises out of an alleged injury to John Harris, Jr. while employed with Newpark on or about May 27, 2001.  (Harris' claim in limitation Rec. Doc. 11).  According to the claim, Harris was preparing to pump fluids from a vessel owned *pro hac vice* by Newpark, the NESI HOPPER BARGE SH-218, from an adjacent vessel [owned and operated by Chouest, the C-COURAGEOUS]. (Rec. Doc 11).  The claim does not refer to the vessel by name, but Chouest knew the vessel was the C-COURAGEOUS and that Harris fell from the SH-218 to the C-COURAGEOUS as evident by witness statements taken on May 27, 2001 apparently as part of an internal investigation by Chouest.  These statements of Thomas Chesire and Mark Allen, attached as Exhibits "A" and "B", are on Chouest letterhead and reflect that Allen and Chesire both participated in the pumping operations and went to assist Harris after he fell. (Exhibits "A" and "B").  The statements also reflect that Harris appeared "unconscious" and complained of hip, back and head injuries.  (Exhibits "A" and "B").

2

After the pumping operations began, the manifold on the hopper barge allegedly broke loose and shifted allowing a stream of fluid to strike Harris, causing him to fall eight to ten feet to the deck of the COURAGEOUS.  (Rec. Doc. 11).  As a result of his fall from the SH-218 to the deck of a Chouest vessel, Newpark filed a Complaint in this Court seeking Exoneration from or Limitation of Liability in connection with "any and all claims, cause of action, damages, injuries, or destruction arising out of the incident on the M/V NESI HOPPER BARGE SH-218 on May 27, 2001."  (Rec. Doc. 1,7).  At the time Newpark filed the Limitation Action, the only pending suit was also a claim by Harris in the 25th Judicial District Court of Louisiana, Case No. 48-302, Division "A." (Exhibit "C").

As required by the Act, Newpark published a notice to all potential claimants that they must file a claim or be barred from taking any further action against it as vessel owner. The notice appeared in the New Orleans Times-Picayune on April 29, May 6, 13 and 20, 2002. (Affidavit of Publication, Exhibit "D").  Harris was the only party to file a claim before the deadline set by this court, May 31, 2002 and published in the notice. (Rec. Doc. 11, Exhibit "D").  Harris and Newpark then reached a settlement.  The Motion and Order filed by Harris and signed by this Court dismissing Harris' claims with prejudice against Newpark set forth the terms of that settlement reached in August of 2002.  Harris would dismiss his claim in the limitation proceeding with prejudice while reserving his rights against other parties and for workers' compensation against Newpark pursuant to the Longshore & Harbor Workers'

3

Compensation Act. (Rec. Doc. 20, also attached as Exhibit "E").[1] This Court signed the Order, effectively terminating this case on August 7, 2002. (Exhibit "E").

This case was in closed status until Harris, after obtaining other counsel, brought suit against Chouest for negligent operation of the C COURAGEOUS in the 25th Judicial District Court, Case No. 50-682, Division "B", filed on April 5, 2004.  In that case, Harris sought recovery against Chouest as owner/operator of the C-COURAGEOUS pursuant to 905(b) of the Longshore & Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* and the general maritime law. (Exhibit "F"). Newpark and its insurer, The Gray Insurance Co. intervened to recover compensation from Chouest in the event Chouest is found liable.

### Cross Claim by Chouest against Newpark Filed in State Court
### After Significant Delay

Despite service of plaintiff's claim in April, 2004, Chouest did not file a cross-claim until almost one year later.  On March 10, 2005, Chouest then filed a cross-claim against Newpark alleging its negligence as a vessel owner/operator of the NESI HOPPER BARGE SH-218, seeking contribution and indemnity - -  claims that could only be brought timely in a limitation proceeding.[2]  Specifically, the cross-claim alleges that the C-COURAGEOUS, was moored at Newpark's facility in Plaquemines Parish alongside the NESI HOPPER BARGE SH-218

---

[1]Under *AmClyde*, a dismissal with prejudice acts the same as a settlement because there is no requirement that the settlement be for any amount at all.  Accordingly, the dismissal wit prejudice is sufficient to invoke the doctrine and no further documentation is required, especially in light of the fact this occurred almost three years ago.

[2]Technically, the contribution claim must be made under Rule 14(c) which is modeled after former Admiralty Rule 56 which invokes the *AmClyude* doctrine.  See also *Boca Grande Club, Inc. v. Florida Power & Light Co., Inc.*, 511 U.S. 222 (1994).

(Exhibit "G", ¶ 4).[3]  Chouest alleges that "solely as a result of the deficiency of the equipment and/or appurtenance of the NESI HOPPER BARGE SH-218 and/or the operation of the barge, plaintiff [Harris] was involved in an accident that resulted in physical injury."  (Exhibit "G", ¶ 7).

### Discussions Between Counsel

Contrary to Chouest's assertions that Newpark's default judgment occurred after "procedural slight of hand", counsel for Chouest was advised of the Limitation proceeding one month before Newpark filed the default.[4]  Specifically, counsel for Newpark informed counsel for Chouest that the cross-claim is precluded under *AmClyde* in a letter dated March 23, 2005. The letter advised Chouest of the settlement, dismissal of Harris' claims against Newpark with prejudice, and included appropriate Limitation proceedings. (Letter, Exhibit "H").  Instead of dropping the cross-claim, which could only be filed in this federal court, Chouest then re-set a hearing on the motion for leave to file same in state court for June 22, 2005.  Newpark filed the default on April 27, 2005, and this Court signed the Order on May 11, 2005.  (Rec. Doc. 26).

**II.**    *Law and Argument*

Either the settlement between Harris and Newpark or dismissal of Harris' claims against Newpark with prejudice triggers the application of *AmClyde* and Chouest cannot make a claim

---

[3]Compare the allegations with the statements and it is obvious that Chouest was aware not only of a potential claim in limitation by Newpark, but also that it should consider filing its own limitation proceeding under the Limitation of Liability Act as of May, 2001.

for contribution and tort indemnity against Newpark--a settling defendant in any proceeding. *In Re J.A.R. Barge Lines, L.P.*, 2005 WL 642700 (W.D. Pa.)(late claims for contribution and indemnity precluded after settlement in limitation proceeding under *AmClyde)*. Alternatively, Chouest cannot meet the requirements for setting aside the default and for filing a late claim under *Golnoy Barge Co. v. Shimoussa*, 980 F.2d 349, 351 (5th Cir. 1993) as discussed by this Court *In Re Trace Marine,* Order dated October 15, 2003, <u>affirmed</u> by 114 Fed. Appx. 124, 2004 WL 2537085 (5th Cir. La.), (Minute Entry attached as Exhibit "I").

A.    **CHOUEST IGNORES *AMCLYDE*, AND BECAUSE IT CANNOT PREVAIL ON THE MERITS, THE MOTION TO SET ASIDE DEFAULT MUST BE DENIED.**

At the outset, Chouest is precluded by *AmClyde* from setting aside the default because the doctrine precludes the cross-claim in state court, and the similar claims for contribution and tort indemnity that it now seeks to file by needlessly re-opening this limitation proceeding. *J.A.R. Barge Lines,* 2005 WL 642700 at 2-3. Because Chouest cannot show a fair probability of success on the merits, the motion to set aside the default must be denied. *Federal Savings & Loan Ins. Co.*, 858 F.2d 1067, 69-70 (5th Cir. 1999). *AmClyde* prohibits the claim Chouest seeks to bring after setting aside the default without any prejudice to Chouest, because Chouest remains liable only for its proportion of fault, with any liability of Newpark ascertained as an

---

[4]Regardless of the timing of the default, Chouest cannot either prevail on the merits if a late claim for contribution and tort indemnity were allowed, or explain how it did not receive notice of the limitation action filed by Newpark through publication in the Times Picayune in April and May 2002.

6

"empty chair" in state court. [5] *J.A.R. Barge Lines*, 2005 WL 6427000 at 2-3 (citing *D.N.H. Towing Co., Inc.*, 1993 WL 51835 (E.D. La.)).

As a case under the general maritime law, comparative fault rules apply and liability is allocated "among the parties proportionately to the comparative degree of their fault." *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 411, 95 S. Ct. 1708, 1715-1716 (1975); *see also, Avondale Industries, Inc. v. Int'l Marine Carriers, Inc.*, 15 F.3d 489, 495 (5th Cir. 1994). Under the *AmClyde* doctrine, a defendant is only liable to the extent of its comparative fault. *Id.* This doctrine applies where certain defendants have either settled with the plaintiff, or the plaintiff has dismissed his claims with prejudice against one of the defendants. *Cargill Ferrous International Division of Cargill, Inc. v. M/V Princess Margherita*, 2001 WL 1426678, at *3 (E.D. La.). In such a case, non-settling tortfeasors are only liable for the proportionate share of the total of the plaintiff's damages. *AmClyde,* 114 S.Ct at 1466. "Under this approach, no suits for contribution from the settling defendants are permitted, nor are they necessary, because the non-settling defendants pay no more than their share of the judgment." *Id.*

Chouest claims that Newpark has not met its burden of showing the existence of a settlement agreement, which is neither correct factually nor as a matter of law. Under *AmClyde* and its progeny, a non-settling defendant is prohibited from bringing claims for contribution and tort indemnity against either a settling defendant or one who the plaintiff has dismissed with

---

[5]If the matter were re-opened, Newpark will again have to file a stay in the 25th Judicial District Court in Louisiana only to file a motion for summary judgment under *AmClyde* in the limitation proceeding – a waste of judicial

prejudice. *Cargill*, 2001 WL 1426678 at 3 (no requirement for any amount of money);  *See also, Ensco Marine Co. v. Bird Johnson Co.*, 2004 WL 2452767, at 2 (E.D. La. Nov. 01, 2004) (No. Civ. A. 03-489); *Cliffe v. Sportsman's Cove, Inc.*, 2003 WL 22415997, at 3 (E.D. La. Oct. 21, 2003) (No. Civ. A. 03-1705).   In this case, the record speaks for itself.   (Rec. Doc. 20).   The Order signed by this Court dismissing Harris' claim with prejudice against Newpark shows that the parties reached a settlement and that *AmClyde* applies.  *Cargill*, 2001 WL 1426678 at 3, *Ensco*, 2004 WL 2452767 at 2.

The Order sets forth the terms of the settlement, and regardless, dismisses Harris' claims with prejudice, triggering the *AmClyde* doctrine. *Id.* As evident by this authority, all that is required is dismissal with prejudice because "all claims against the settling defendant are extinguished including claims for contribution and tort indemnity by non-settling defendants." *Cargill*, 2001 WL 1426678, at *3. In *Cargill,* the Court emphasized:

> There is no requirement under *AmClyde* that the settlement be for a reasonable amount, or for any amount of money at all. If the plaintiff chooses to dismiss a defendant with prejudice, there is no logical reason that the rule of *AmClyde* would not apply. There is absolutely no prejudice to the remaining defendants as they will only be liable for their respective percentages of negligence, if any. Additionally, they will have the advantage of pointing to an empty chair.

*Id.* at *3-4. See, also, *Sportsman's Cove,* 2003 WL 2241597 at 3; *Ensco Marine Co.*, 2004 WL 2452767 at 2; *J.A.R. Barge Lines,* 2005 WL 642700 at 3. As established by this authority, when Harris dismissed its claims against Newpark with prejudice it is now unreasonable to push

---

resources.

Newpark to judgment against non-settling defendants because Newpark simply cannot be liable. *Ensco Marine Co.*, 2004 WL 2452769 at 8.

The application of proportionate fault principles to the instant case precludes Chouest from prevailing on the merits if the default were set aside under *AmClyde* and its progeny. Chouest may only be liable for its proportionate amount of fault in the claim now brought by Harris in state court and any liability of Newpark may be established by pursuing an empty chair. *Cargill*, 2001 WL 1426678 at 3; *Ensco Marine Co.*, 2004 WL 2452769 at 8; *J.A.R. Barge Lines*, 2005 WL 642700 at 3. As evident by Chouest's cross-claim in state court, the only claims it seeks to advance in a limitation proceeding after setting aside the default are for contribution and tort indemnity. *AmClyde* as interpreted by *Cargill, Ensco Marine Co.* and *J.A.R. Barge Lines* precludes these claims and the motion to set aside the default must be denied.

**B.    ALTERNATIVELY, *GOLNOY BARGE CO.* FACTORS PRECLUDE RE-OPENING LIMITATION PROCEEDINGS TO ALLOW A LATE CLAIM.**

Second, and in the alternative, Chouest cannot meet the requirements for filing a late claim under *Golnoy Barge Co.* because: 1) the settlement and order dismissing Harris' claims with prejudice determined these proceedings; 2) reopening the Limitation proceedings after that settlement and at this late date will adversely affect Newpark; and 3) Chouest has not adequately explained why it failed to receive notice of the Limitation proceeding, which was properly published in a district where it operates vessels after Harris fell to the deck of the C-

9

COURAGEOUS and prompted an internal investigation. *Id.* 980 F.2d at 351 (citing *Texas Gulf Sulphur Co. v. Blue Streak Towing Co.*, 313 F.2d 359 (5th Cir. 1963).

In *Texas Gulf,* the Fifth Circuit established an analytical framework to guide district courts in their evaluation of decisions to allow or refuse requests by late claimants to file untimely claims under the Limitation of Liability Act.  313 F.2d at 362-63.  The ruling on a motion to file a late claim should consider (1) whether the proceeding is pending and undetermined, (2) whether granting the motion will adversely affect the rights of the parties, and (3) the claimant's reasons for fling late. *Id.* at 363 (citations omitted).  Relief from "a tardy claim is not a matter of right," but a remedy requiring "an equitable showing." *Id.* at 351.

Under the *Golnoy* factors, the following undisputed facts show that Chouest is precluded from re-opening the Limitation proceeding under each element:

1)  The notice was published on April 29, May 6, May 13 and May 20, 2002 in the Times-Picayune; 2) Chouest knew that plaintiff Harris fell from the barge to its vessel, the C-COURAGEOUS during cargo operations between the M/V NESI HOPPER BARGE SH-218 on May 27, 2001; 3) the notice identified the hopper barge and the operations of May 27, 2001; 4) Chouest conducted an investigation into the accident, and took crew statements in May 2001; 5) Chouest, a sophisticated vessel owner, operates in the district where the notice was published and routinely files Limitation of Liability complaints in this Court;  6) The deadline for filing claims was set for May 22, 2002, and regardless of when the default was entered, Chouest cannot show sufficient cause for missing that deadline.  Likewise, except for conclusory statements about

10

Newpark's filing of the default, Chouest has not adequately explained its reasons for filing over three years after the deadline, especially since it is obvious it was aware of Harris' alleged injury in May 2001 – he fell on their vessel – and they investigated the accident after their crew applied first aid.  Finally, Chouest waited almost an entire year before filing the cross-claim against Newpark and cannot now claim equity allows such a late claim.

**1.    The settlement and order dismissing Harris' claims with prejudice determined these proceedings.**

Regardless of when the default was entered, the settlement between Harris and Newpark and dismissal of the respective claims with prejudice is at the very least a "partial termination," and because no other claims existed effectively terminated these proceedings. *In re: Trace,* 03-0093 at 3; *affirmed* by 114 Fed. Appx 124, 2004 WL 2537085 at 3.  As recognized by this court in *Trace,* the settlement of all claims with one claimant while settlement with a second claimant proceeds is evidence of "partial termination" that weighs heavily against allowing late claims. *Id.* Similarly, when a petitioner in limitation nears settlement with a majority of claimants, the courts of this district are not likely to extend the deadline for filing late claims absent a showing of "cause," over just an equitable showing. *In re: Clearsky Shipping Corp.,* 2000 WL 1741785 at 2. (E.D. La.)  Chouest has not shown sufficient cause for reopening the limitation proceeding and to set aside the default and the motion should be denied. *Id.*

**2.  Reopening the Limitation proceedings after that settlement and at this late date will adversely affect Newpark and Harris.**

Newpark obtained the default in accordance with Rule F of the Supplemental Admiralty Rules. Then, where as here, a default judgment exists against all potential claimants, including Chouest, there is an absence of authority to show that a claimant can assert a claim in a limitation action. *In the Complaint of Global Industries Offshore, Inc.,* 2000 WL 1610384 (E.D. La.), 2001 A.M.C. 1255. As discussed in *Global,* the only cases to discuss the issue have refused to reopen the limitation proceeding because the adverse effect on the petitioner in limitation outweighs any equitable consideration alleged by the prospective claimant. *See e.g. Complaint of Gulf Inland Marine Corp.,* 1998 WL 560342 (E.D. La.) (noting adverse affect on rights of vessel owner because exposure would go from "nil" to "over $275,000). The courts also refuse to allow late claims because of the adverse affect on all settling parties who have timely filed. *In the Complaint of Trace,* at 3; *In the Complaint of Westchester M/V,* 2003 WL 2004448 at 2 (E.D. La. 2003) (refusing to allow late claim forms as prejudicial to those who timely filed and negotiating settlement with petitioner).

Newpark settled with Harris, the only claimant to timely file, almost three years ago. Harris dismissed this claim with prejudice and Newpark's exposure was limited to compensation.  Any order reopening the proceeding for a late claim by Chouest is clearly adverse to Newpark's interest. Newpark's exposure increases significantly which is sufficient grounds to deny this motion. *Complaint of Gulf Inland,* 1998 WL 560342 at 2. Likewise,

Newpark will be subjected to unreasonable costs associated with defending a contribution claim

that is prohibited by *AmClyde* and be forced to file a motion for summary judgment on this issue.

The other settling defendant, Harris who timely filed, will also be adversely affected because of

resulting stay, and ultimately would have to file another claim in the Limitation proceeding to

pursue its claims against Chouest. Such a complicated and unusual procedural posture subjects

both Harris and Newpark to unnecessary, expensive and protracted litigation.   Under these

circumstances, the adverse effect on Newpark and Harris under the second *Golnoy* factor

prohibits a late claim by Chouest and the reopening of these proceedings. *In Re Trace* at 3.

**3.     Chouest has not adequately explained why it failed to receive notice of the
        Limitation proceeding, which was properly published in a district where it operates
        after Harris fell to the deck of its vessel, prompting an internal investigation.**

Under the third *Golnoy* factor, Chouest has not met its burden of showing why it lacked

notice other than to say Newpark did not provide a copy of the Limitation Complaint several

years ago.[6] *In Re Clearsky Shipping,* 1997 WL 772815 at 2.  Chouest has not provided or offered

any evidence, by affidavit or otherwise why, as a shipowner operating in the district that

routinely files limitation actions in this court, it did not receive or could not have received notice

by publication. *Id.* This fact, combined with the evidence that shows Chouest knew and

investigated Harris' alleged injuries, especially since he fell on its vessel, the C-

---

[6]As the proceeding was initiated so long ago, Newpark cannot confirm or deny what information was discussed with Chouest and/or discussed between plaintiff's prior counsel and Chouest. Under these circumstances, Newpark denies Chouest's claim that it did not know about the limitation proceeding. Instead, the evidence shows that Chouest knew about Harris' injury, conducted an investigation, and certainly was aware that as a vessel owner also

COURAGEOUS, also weighs heavily against reopening the limitation proceeding. *Id.* Further, Newpark complied with Rule F (4) of the Supplemental Admiralty Rules. That Rule requires actual individual notice of the deadline for filing claims to all persons known to be asserting claims, in this case Harris, and notice by publication to all others—which includes Chouest. *In re Clearsky Shipping,* 1997 WL 772816 at 2; *In re Global Industries Inc.*, 2000 WL 1610334 at 2.

Under these circumstances, Chouest has not met its burden under the third *Golnoy factor* and the motion must be denied, regardless of when the default was entered. *Id.* Likewise, Chouest's claim that Newpark somehow employed trickery to enter a default is neither grounded on proper facts nor supported by the requirements of Supplemental Admiralty Rule F (4). Counsel for Newpark and Chouest conferred and a letter was written outlining Newpark's position and requested that the cross-claim be dismissed under *AmClyde* and because of this limitation proceeding. (Exhibit "H"). Newpark also provided counsel for Chouest with the appropriate limitation proceedings and discussed the application of *AmClyde* and its preclusive affect on additional claims. These actions do not create "manifest injustice" and "inequity." Chouest is prohibited from filing a claim for contribution and indemnity against Newpark under *AmClyde* in any court. Except in the context of an "empty chair", Chouest is also precluded from adjudicating any claims in state court that would affect the rights of Newpark to limit its liability. Chouest knew of Harris' injury and was on notice that a limitation proceeding might be filed by

---

included with the cargo operations in which Harris was allegedly injured, it might consider filing its own limitation complaint.

Newpark and certainly was aware that it might also file its own respective limitation complaint at some time in 2002. Under these facts, Chouest has neither explained why it did not know of the limitation proceeding filed by Newpark after publication in a district in which it conducts business, nor explained all the facts known to it about Harris in May of 2002. Mere conclusory allegations that the lack of notice is "Newpark's fault" is not supported by the evidence—including statements taken by Chouest in 2002—and the publication in the Times Picayune. Chouest has not met its burden under the third *Golnoy* factor and the motion should be denied. *In re Clearsky Shipping*, 1997 WL 772815 at 2, *In re Global Industries Inc.*, 2000 WL 1610384 at 2.

4.      ***Gladiator* distinguishable.**

Chouest's reliance on *Gladiator* to show sufficient cause is also misplaced. *Gladiator* is readily distinguishable as the claimants sought to file late claims within a few months after the deadline for filing claims in the limitation, not, as here, almost three years later. As such, *Gladiator* is of little precedential value, other than to repeat the requirements of *Golnoy*, especially since the entire analysis is affected by the single most important fact in this case - - Harris dismissed his claims against Newpark with prejudice and this Court signed the Order on August 7, 2002. (Exhibit "E"). This important fact is not present in *Gladiator* as no settlement or dismissal had occurred in the limitation proceeding at the time that late claims were pursued and allowed. If it were, *Amclyde* would have applied and the result significantly altered with the same result as in *J.A.R. Barge Lines*, 2005 WL 642700 at 3.

15

**5.      Chouest has no cause of action under laches.**

Chouest did not file a late claim in the limitation proceeding because there, as here, the maritime doctrine of *laches* prohibits the filing of such a late claim.  A finding of *laches* bars an action where the claimant's delay in filing suit results in prejudice to the defendant.  *Acres v. State Marine Lines, Inc.*, 344 F.2d 217 (5th Cir. 1965).  Typically, where as here, a claim will be filed more than three years after the incident, it is proper for this Court to dismiss the claim with prejudice.  *Puerto-Rican American Insurance Company v. Benjamin Shipping Company, Ltd.*, 829 F.2d 281 (1st Cir. 1987); *Reynolds v. Hartland Transportation Company*, 849 F.2d 1074 (8th Cir. 1988).  This doctrine, like *AmClyde* also would prohibit the filing of a late claim in the limitation proceeding and prohibit this court from setting aside the default because Chouest cannot prevail on the merits. *Federal Savings & Loan Ins. Co.*, 858 F.2d at 69-70.

## CONCLUSION

Chouest cannot prevail on the merits under *AmClyde* and its progeny and should not be allowed to set aside the default and file a late claim for contribution and indemnity after opening the limitation proceeding.  Harris settled with Newpark and dismissed with prejudice all claims brought timely in the limitation, triggering *AmClyde. Cargill*, 2001 WL 1426678 at 3; *J.A.R. Barge Lines*, 2005 WL 642700 at 3.  In the alternative, Chouest has not shown sufficient cause under the *Golnoy Barge Line* factors.  For all practical purposes, the dismissal of Harris' claims against Newpark determined the case regardless of when the default was entered.  Second, both Harris and Newpark will be adversely affected if the Limitation proceeding is re-opened,

16

especially in light of their prior settlement. Finally, Chouest has not adequately explained why the notice and publication in the Times-Picayune in April and May 2002 did not alert it to this Limitation proceeding.  As of May 2002, Chouest knew of Harris' alleged injury, conducted an internal investigation, and operates vessels in this district.  Under these circumstances, Chouest has not shown sufficient cause to set aside the default and re-open this proceeding. *J.A.R. Barge Lines,* 2005 WL 642700 at 3.

Respectfully submitted,

**REICH, MEEKS, & TREADAWAY, L.L.C.**

_____
ROBERT S. REICH (#11163)
JOHN S. GARNER (#25314)
Two Lakeway Center, Suite 1000
3850 North Causeway Boulevard
Metairie, LA  70002
Telephone:  (504) 830-3999
Fax:  (504) 830-3950
*Counsel for Newpark Environmental Services,
L.L.C. and The Gray Insurance Company*

## CERTIFICATE OF SERVICE

　　　　**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing pleading has been served upon all counsel of record to this proceeding, via hand delivery, facsimile transmission, or U. S. Mail, postage prepaid and properly addressed, this _7_ day of June, 2005.

_____

17

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED